STATE OF HAWAII, Plaintiff-Appellant, *v.* ALFRED KAPALA CARROLL, Defendant-Appellee

NO. 7335

APRIL 29, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

*Per Curiam.* The State appeals from a circuit court order granting defendant-appellee Alfred Kapala Carroll's motion to dismiss an indictment charging him with a violation of HRS §§ 705-500 and 708-821(1)(b) (Attempted Criminal Property Damage in the Second Degree). In an earlier district court trial, defendant had been acquitted of the charge of violating Revised Ordinances of Honolulu (R.O.H.) § 13-21.3(a) (1969) (Possession of an Obnoxious Substance). The issue on appeal is whether the separate charges against

defendant arose from the same "episode." If so, HRS §§ 701-109(2)[1] and 701-111(1)(b)[2] bar the State from bringing defendant to trial for Attempted Criminal Property Damage in the Second Degree after prosecuting him on the possessory charge. We find that the two charges did not arise from the same episode and therefore, we reverse.

## I.

Defendant was arrested on October 19, 1978 at 2:40 a.m. for starting a fire at Jefferson School. Police Officer Mossman, who was alerted to the scene by a private citizen, conducted a routine search of defendant for weapons and found a cannister. Believing it was a container of nasal spray, he returned it to defendant.

Defendant was then transported to the police station and booked for Attempted Criminal Property Damage in the Second Degree. During a custodial search by Police Officer Hee, the cannister was again recovered. This time, however, the police officer identified it as Mace. Defendant was subsequently charged at 3:20 a.m. for Possession of an Obnoxious Substance.

On December 26, 1978, defendant was brought to trial in the district court and acquitted of the misdemeanor charge of Posses-

---

[1] HRS § 701-109(2) provides as follows:

Except as provided in subsection (3) of this section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

[2] HRS § 701-111(1)(b) provides:

When prosecution is barred by former prosecution for a different offense. Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:

(1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701-110(3) and the subsequent prosecution is for:

. . . .

(b) Any offense for which the defendant should have been tried on the first prosecution under section 701-109 unless the court ordered a separate trial of the offense[.]

sion of an Obnoxious Substance. On March 2, 1979, he was brought to trial in the circuit court on the felony charge of Attempted Criminal Property Damage in the Second Degree.[3] Defendant argued that the two offenses were part of a single "episode" within the context of HRS § 701-109(2) , *supra,* and should have been prosecuted in the same proceeding.

Defendant moved to dismiss the indictment for Attempted Criminal Property Damage in the Second Degree on the ground that he had been prosecuted previously for Possession of an Obnoxious Substance, an offense arising from the same episode. He argued that the prosecution for Attempted Criminal Property Damage in the Second Degree was prohibited by HRS § 701-111(1)(b), *supra.*

The trial court concluded that the Attempted Criminal Property Damage offense was "closely related enough [to the possessory offense] so that it can be considered as part of a series and stemming from one incident or transaction that resulted in separate arrests." After finding that both charges were properly within its jurisdiction, the trial court granted defendant's motion to dismiss the indictment, based primarily on *State v. Aiu,* 59 Haw. 92, 576 P.2d 1044 (1978).

The question presented on appeal is whether HRS §§ 701-109(2) and 701-111(1)(b) prohibit the State from bringing defendant to trial for Attempted Criminal Property Damage in the Second Degree after defendant had been acquitted of the possessory charge.

## II.

This court has previously addressed the issue of whether a subsequent prosecution must be barred by HRS § 701-109(2) in *State v. Aiu, supra.* However, in *Aiu,* it was conceded that the offenses charged arose from the same conduct or episode. *Id.,* 59 Haw. at 96, 576, P.2d at 1048. *Aiu* is therefore not precedential authority for the case at bar.

Section 701-109(2), HRS, prohibits the State from subjecting a defendant to separate trials for offenses arising from the same conduct or "episode," provided that the offenses are known to the

---

[3] On October 24, 1978, this case was bound over to the circuit court from the district court. The indictment charging defendant with Attempted Criminal Property Damage in the Second Degree was filed on January 16, 1979.

prosecutor at the commencement of the first trial and are within the jurisdiction of a single court. Under HRS § 701-111(1)(b), the State is barred from subsequently prosecuting a defendant for any offense which should have been joined in a prior trial under HRS § 701-109(2). *State v. Solomon*, 61 Haw. 127, 596 P.2d 779 (1979); *State v. Aiu*, 59 Haw. 92, 99 n.11, 576 P.2d 1044, 1049 n.11 (1978); *Commentary* on HRS § 701-111.

The word "episode" is not defined in the Hawaii Penal Code or the American Law Institute's Model Penal Code.[4] On appeal, the State argues that the charges were unrelated and did not arise from the same "episode." The State contends that multiple offenses arise from the same "episode" where the offenses are motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan. The basis of the State's test of "episode" lies in Model Penal Code § 1.08(2)(b) and (c) (Tent. Draft No. 5, 1956). That section provides in relevant part:

(2) Requirement of Single Prosecution. Except as provided in paragraph (3) of this Section, if a person is charged with two or more offenses and the charges are known to the proper officer of the police or prosecution and within the jurisdiction of a single court, they must be prosecuted in a single prosecution when:

.　.　.　.

(b) the offenses are based on a series of acts or omissions *motivated by a purpose to accomplish a single criminal objective,* and necessary or incidental to the accomplishment of that objective; or

(c) the offenses are based on a series of acts or omissions *motivated by a common purpose or plan* and which result in the repeated commission of the same offense or affect the same person or the same persons or the property thereof. (Emphasis supplied).

The State contends that Model Penal Code § 1.08(2) (Tent. Draft No. 5, 1956) is the forerunner of HRS § 701-109. Hence, the State argues that in formulating HRS § 701-109(2), the Legislature coined

---

[4] The Legislature considered the drafts and commentary of the Model Penal Code in enacting HRS § 701-109(2), and we interpret the intent behind this statute in a manner consistent with the structural scheme of the Model Penal Code.

the word "episode" as a shorthand means of encompassing the situations described in Model Penal Code § 1.08(2)(b) and (c) (Tent. Draft No. 5, 1956). The State therefore argues that the test of a single "episode" should focus on whether the offenses were motivated by a single criminal objective or common purpose or plan.

Defendant argues that the offenses occurred concurrently and were therefore part of the same episode. He urges this court to adopt a test which would find multiple charges arising from the same episode "if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." *State v. Boyd,* 271 Or. 558, 564, 533 P.2d 795, 798 (1975) (quoting from *State v. Fitzgerald,* 267 Or. 266, 273, 516 P.2d 1280, 1284 (1973)).

Alternately, defendant maintains that the Mace was carried as protection during the attempt to set the school afire and was necessary to accomplish that purpose. Hence, he argues that the offenses arose from a single episode, regardless of which test is applied.

### III.

All of the preconditions required for the application of HRS § 701-109(2) are satisfied in this case. It is uncontested that the appropriate prosecuting officer was aware of the existence of the Attempted Criminal Property Damage charge at the time that the possessory charge was prosecuted.[5] Furthermore, both charges are clearly within the jurisdiction of a single court. *State v. Aiu,* 59 Haw. 92, 97 n.8, 576 P.2d 1044, 1048 n.8 (1978); HRS § 603-21.5(1); *cf.* HRS § 701-118(1).

We begin with consideration, and rejection, of the State's interpretation of the word "episode." First, the State contends erroneously that HRS § 701-109(2) was derived from Model Penal Code § 1.08(2) (Tent. Draft No. 5, 1956) and therefore assumes that the

---

[5] Since the record on appeal does not contain a copy of the complaint charging defendant with Possession of an Obnoxious Substance, there is no evidence as to whether that complaint enumerated facts concerning the Attempted Criminal Property Damage charge. However, Officer Hee testified that the police report on the possessory charge mentioned that defendant had been initially arrested for Attempted Criminal Property Damage in the Second Degree.

Model Penal Code does not use the word "episode." Thus, the State hypothesizes that the Legislature coined the word "episode" as a shorthand means of encompassing subsections (b) and (c) of Model Penal Code § 1.08(2).

We note that the provision upon which the State relies was amended and renumbered as Model Penal Code § 1.07(2) in the 1962 Proposed Official Draft and that the amended provision contained the word "episode." Model Penal Code § 1.07, status of section (Proposed Official Draft, 1962). Furthermore, the Table of Derivation accompanying the Hawaii Penal Code indicates that HRS § 701-109 was derived from Model Penal Code § 1.07 (Proposed Official Draft, 1962), rather than its predecessor. 7A HRS at 497, app. § 3. Model Penal Code § 1.07(2) provides:

> (2) Limitation on Separate Trials for Multiple Offenses. Except as provided in Subsection (3) of this Section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

Second, the comment accompanying Model Penal Code § 1.07(2) reveals that the drafters of the code did not intend "episode" to encompass the situations described in Model Penal Code § 1.08(2)(b) and (c) (Tent. Draft No. 5, 1956). Model Penal Code § 1.07(2), as originally drafted, was considerably broader and would have required joinder of offenses where it is now merely permissible. Although the Model Penal Code Advisory Committee favored broadening the formulation to include offenses "based on a course of conduct having a common criminal purpose or plan or involving repeated commission of the same kind of offense," the Model Penal Code Council viewed both this and the original language in Model Penal Code § 1.08(2) (Tent. Draft No. 5, 1956) as too inclusive. Model Penal Code § 1.07, status of section (Proposed Official Draft, 1962). Model Penal Code § 1.07(2), limiting the requirement to "multiple offenses based on the same conduct or arising from the same criminal episode," was designed to meet the Council's view. *Id.* Thus, we can infer from the commentary to Model Penal Code § 1.07(2) that the Legislature, in formulating HRS § 701-109(2), did not intend a determination of a single criminal "episode" to be based

solely upon a defendant's singular criminal objective or common purpose or plan.

Although we reject the State's interpretation of "episode," we acknowledge that evidence of one crime is admissible in the trial of another crime if it tends to prove motive, intent, common scheme or plan, or design involving the commission of two or more crimes so related that proof of one tends to prove the other. *Drew v. United States*, 331 F.2d 85, 90 (1964). However, mere allegations of a defendant's subjective intent are insufficient to require joinder of offenses that are otherwise unrelated.

## IV.

Section 701-109(2), HRS, reflects a policy that a defendant should not have to face the expense and uncertainties of multiple trials based on essentially the same conduct or episode. *Commentary* on HRS § 701-109. It is designed to prevent the State from harassing a defendant with successive prosecutions where the State is dissatisfied with the punishment previously ordered or where the State has previously failed to convict the defendant. *State v. Solomon*, 61 Haw. 127, 134, 596 P.2d 779, 784 (1979).

We agree with defendant that proximity in time, place and circumstances of the offenses will necessarily enter into the policy considerations underlying HRS § 701-109(2). Where the offenses occur at the same time and place and under the same circumstances, it is likely that the facts and issues involved in the charges will be similar. The witnesses to be used and the evidence to be offered will probably overlap to the extent that joinder of the charges would be justified. Compulsory joinder of offenses which share a proximity in time, place and circumstances would not only protect the defendant from successive prosecutions based on the same conduct or episode, but it would also save the defendant and the State time and money required in the presentation of repetitive evidence.

In view of the dual considerations of fairness to the defendant and society's interest in efficient law enforcement, we hold that the test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.

We do not, of course, by our holding in this case, preclude a defendant from asserting his right to separate trials where joinder of the offenses would be unjust and prejudicial.

Applying the test to the facts before us, we reject defendant's contention that the offenses occurred concurrently. Defendant argues that it would be unreasonable to conclude that the possessory offense did not occur until the arrest at the police station. He points to the arresting officer's initial discovery of the cannister as evidence that he was in possession of the Mace at the schoolyard.

Defendant also attempts to draw an analogy between his predicament and the situation in *State v. Matischeck*, 531 P.2d 737 (Or. App. 1975). In *Matischeck*, the defendant had been arrested for Driving Under the Influence of Intoxicating Liquor and a vial of tablets was recovered from his person during a routine search. Two days later, the tablets were identified as amphetamines and an information was filed charging the defendant with Criminal Activity in Drugs. *Id.* at 738. Defendant emphasizes that in *Matischeck*, the possessory charge was effective as of the arrest for Driving Under the Influence of Intoxicating Liquor, rather than at the time the substance was identified. Therefore, he argues that the possessory charge in the instant case should be effective as of the arrest for Attempted Criminal Property Damage in the Second Degree, rather than at the time the Mace was identified at the police station.

We find that defendant was charged with the commission of offenses which occurred at different times and places and under different circumstances. Our rationale is based primarily on the fact that the arresting officer failed to recognize the illegal nature of the cannister at the time of the search for weapons. As a result, defendant's possession of the Mace continued after his initial arrest, until the subsequent discovery and identification at the police station.

While it is true that the possessory offense can be traced to the time of the first arrest, we cannot say that the possessory charge should be deemed effective as of the time of that arrest. The point in time at which the Mace was identified is important because prior to the identification, the facts and circumstances within the first arresting officer's knowledge did not afford probable cause to believe that an offense other than Attempt' Criminal Property Damage in the Second Degree had been comi ited. *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881 (1964); *Car ill v. United States*, 267 U.S. 132, 45

S.Ct. 280 (1925); *State v. Chong*, 52 Haw. 226, 231, 473 P.2d 567, 571 (1970). The facts can be distinguished from those in *State v. Matischeck*, 531 P.2d 737 (Or. App. 1975), where the police officer's immediate seizure of the vial indicated that he had probable cause to suspect contraband. In contrast to the case at bar, the identification of the contraband in *Matischeck* served to verify the earlier suspicion.

Furthermore, under HRS § 701-108(4),[6] an offense of a continuing nature such as the possession of Mace is deemed to be committed at the time when the course of conduct is terminated.

Not only did the offenses occur at different times and places, but they were discovered under different circumstances which resulted in arrests by different police officers. We therefore conclude that the offenses were so separate in time and place and so distinct in circumstances that the acquittal on the possessory charge did not bar prosecution for the Attempted Criminal Property Damage in the Second Degree.

Reversed and remanded for further proceedings not inconsistent with this opinion.

*Keith M. Kaneshiro,* Deputy Prosecuting Attorney, for plaintiff-appellant.

*Nolan Chock (Theodore Uyeno* on the brief), Deputy Public Defenders, for defendant-appellee.

---

[6] HRS § 701-108(4) provides in part:
An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated.