**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000798
15-JAN-2021
07:53 AM
Dkt. 42 MO**

NO. CAAP-16-0000798

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellant, v.
BRONSON SARDINHA, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF FIRST CIRCUIT
(CRIMINAL NO. 16-1-0359)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Wadsworth and Nakasone, JJ)


Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the Circuit Court of the First Circuit's (**circuit court**)[1] October 14, 2016 "Order Granting Defendant Bronson Sardinha's Motion to Dismiss with Prejudice Pursuant to HRS § 701-111 and § 701-109"[2] (**Order Granting Motion to Dismiss**).

On appeal, the State argues that the circuit court erroneously applied the compulsory joinder statute, Hawaiʻi Revised Statutes (**HRS**) § 701-109(2) (2014), and abused its discretion in dismissing the charge of Assault Against a Law Enforcement Officer (**Assault Against LEO**) against Defendant-Appellee Bronson Sardinha (**Sardinha**), as arising from the "same episode" as a prior case involving driving charges.

For the reasons discussed below, we vacate the circuit court's Order Granting Motion to Dismiss and remand for further proceedings.

---

[1]     The Honorable Glenn J. Kim presided.

[2]     Hawaiʻi Revised Statutes (HRS) §§ 701-109 (2014) and 701-111 (2014) are set forth in relevant part infra.

## I. BACKGROUND

On November 28, 2015, at about 10:50 p.m., a "Motor Vehicle Fled Scene" (**fled scene**)[3] type case occurred at Farrington Highway and Waipio Point Access Road, involving a vehicle with license plate GRA 505.[4] About one hour later, at 11:51 p.m., Honolulu Police Department (**HPD**) police officers Jon Nguyen (**Officer Nguyen**) and Shayne Sesoko (**Officer Sesoko**) were dispatched to a parking lot fronting "Nancy's Kitchen" in the Waipio Shopping Center to respond to an argument between a female and a male; the male was later identified as Sardinha. When the police officers arrived, the female indicated that the argument was over and that she would call her mother to pick her up, whereupon she went back inside Nancy's Kitchen to wait. The management of Nancy's Kitchen did not allow Sardinha back inside, as he was "very uncooperative." Officer Sesoko "could smell a very strong odor of alcoholic beverage" on Sardinha's breath while speaking with him about the argument. Because Sardinha did not leave the area, Officers Nguyen and Sesoko waited outside of Nancy's Kitchen until the female's mother arrived. Sardinha was swearing and yelling at the police officers.

As Officers Nguyen and Sesoko waited, Officer Sesoko observed Sardinha walk over to a white SUV that had front-end damage, enter the vehicle, and sit in the driver's seat. Officer Sesoko noticed the SUV bore license plate GRA 505, and this plate number matched the number of the vehicle involved in the fled

---

[3] "Motor Vehicle Fled Scene" refers to the offense of Leaving Scene of Accident Involving Vehicle Damage, under HRS § 291C-13 (Supp. 2008), which requires:

> The driver of any vehicle involved in an accident resulting only in damage to a vehicle or other property that is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible, but shall forthwith return to, and in every event shall remain at, the scene of the accident until the driver has fulfilled the requirements of section 291-14 . . . .

HRS § 291C-14 (Supp. 2008) concerns the duty of a driver involved in an accident to give information and render aid if necessary.

[4] These facts are derived from the police reports that were stipulated into evidence during the hearing on Sardinha's motion to dismiss.

scene case from earlier that evening. When Sardinha stepped out of the white SUV, Officer Sesoko informed him that the vehicle he was sitting in was involved in a motor vehicle accident in which the vehicle had fled the scene. Sardinha became "even more irritated" and denied owning the car and being inside the car. Officer Nguyen asked Sardinha for his driver's license, registration, and proof of insurance, to which Sardinha responded, "I got nothing." Sardinha continued to attempt to provoke Officer Nguyen to fight, uttering profanities and racial slurs.

Police officer Crystal Roe (**Officer Roe**) arrived at about 12:24 a.m. and recognized Sardinha from an unrelated incident that had previously occurred on October 31, 2015. Sardinha was being "aggressive" and "uncooperative" by not providing identification. When Sardinha recognized Officer Roe from the October 31, 2015 incident, he became cooperative and provided Officer Roe his identification.

The police officers conducted a warrant check on Sardinha, revealing a contempt warrant. Sardinha was informed of the warrant, handcuffed, and escorted to a police vehicle pending confirmation of the warrant and "due to his increasingly aggressive behavior."

Sardinha was instructed numerous times to get into the back of the police vehicle, but he refused. Officers Roe, Nguyen, and Sesoko continued to attempt to get Sardinha into the police vehicle using "light touch and verbal commands[,]" but Sardinha refused and continued to evade entering the police vehicle. Sardinha suddenly stepped forward towards Officer Sesoko and head-butted Officer Sesoko in the right side of his face. Officer Sesoko had a small lump and bruising under his right eye and felt extreme pain at the time of the head-butt.

Officers Roe and Sesoko were able to place Sardinha in the police vehicle after Officer Sesoko used his O.C. spray. Sardinha was then informed that he was no longer being detained

but was now under arrest for assaulting a law enforcement officer.

Officer Roe's November 29, 2015 police report contained the following references at the end:

> RELATED REPORTS
> 15-476932 Contempt
> 15-476941 Resisting Arrest
> 15-476847 MVC Fled Scene
>
> RELATED CITATIONS
> 1DTC-15-071381 issued by Officer T. Duponte for the following violations: HRS 286-102 DWOL, HRS 286-132 Revoked, HRS 291-12 Inattention, HRS 291C-13 Leaving the Scene of an Accident, HRS 291E-62(a) Revoked OVUII, and HRS 431:10C-104 No Insurance Policy
>
> DISPOSITION
> Arrested and booked

On December 11, 2015, a Deputy Prosecuting Attorney reviewed the investigative file and accepted the Assault Against LEO charge. The file specifically referenced the fled scene offense.

On December 28, 2015, the State filed a complaint in the District Court of the First Circuit (**district court**) charging Sardinha with Inattention to Driving (HRS § 291-12 (Supp. 2008);[5] Accidents Involving Damage to Vehicle or Property (HRS § 291C-13); Operating a Vehicle After License and Privilege Have Been Suspended or Revoked for Operating a Vehicle Under the Influence of an Intoxicant (HRS §§ 291E-62(a)(1) and/or (a)(2), (b)(1)); and Driving Without Motor Vehicle Insurance (HRS §§ 431: 10C-104(a), 431: 10C-117(a))(collectively **Driving Charges**).[6]

---

[5]       **Inattention to Driving.** Whoever operates any vehicle without due care or in a manner as to cause a collision with, or injury or damage to, as the case may be, any person, vehicle or other property shall be fined not more than $500 or imprisoned not more than thirty days, or both, and may be subject to a surcharge of up to $100, which shall be deposited into the trauma systems special fund.

HRS § 291-12 (Supp. 2008).

[6]       We take judicial notice of the district court complaint filed in 1DTC-15-071381. See In re Estate of Kam, 110 Hawaiʻi 8, 12 n.5, 129 P.3d 511, 515 n.5 (2006)(appellate courts may take judicial notice of records in a
(continued...)

On March 8, 2016, Sardinha pled no contest to the Inattention to Driving charge (**Driving Charge**), and all of the remaining Driving Charges were dismissed with prejudice.

Also on March 8, 2016, the State filed a Grand Jury indictment in Circuit Court, charging Sardinha with Assault Against LEO in violation of HRS § 707-712.5(1)(a)[7] for the alleged assault of Officer Sesoko.  Sardinha had entered his plea to the Driving Charge in district court purportedly unaware that the State was seeking a conviction for the Assault Against LEO offense in circuit court.

On August 29, 2016, Sardinha filed a Motion for Dismissal with Prejudice Pursuant to HRS § 701-111 and § 709-109 (**Motion to Dismiss**),[8] asserting that HRS § 701-109(2) bars prosecution of the Assault Against LEO charge because Sardinha had been previously convicted of the Driving Charge, and both offenses arose from the same episode and were known to the State. In opposition, the State argued that the Assault Against LEO charge and the prior Driving Charge did not arise out of the same criminal episode.

At the hearing on the Motion to Dismiss on September 28, 2016, the parties stipulated the police reports of Officers Nguyen, Roe, and Sesoko into evidence, and stipulated to defense counsel's representation that the distance between the locations where the two offenses occurred was 2.1 miles.

---

[6](...continued)
related case not appearing in the record on appeal).

[7]        **Assault against a law enforcement officer in the first degree.**  (1) A person commits the offense of assault against a law enforcement officer in the first degree if the person:

> (a)    Intentionally or knowingly causes bodily injury to a law enforcement officer who is engaged in the performance of duty[.]

HRS § 707-712.5 (2014).

[8]        These statutes, HRS § 701-111 and HRS § 709-109, are set forth in relevant part in the discussion section.

The circuit court agreed with Sardinha's argument and granted dismissal, because it could not "see how a complete account of the assault-against-police-officer charge could be given without referring to the details of the earlier accident." On October 14, 2016, the circuit court entered the instant order granting the Motion to Dismiss. This timely appeal followed.

On appeal, the State argues that the circuit court abused its discretion in granting the Motion to Dismiss because the Assault Against LEO charge and the Driving Charge did not arise out of the same episode.

## II. STANDARDS OF REVIEW

### Motion to Dismiss Indictment

A trial court's ruling on a motion to dismiss an indictment is reviewed for an abuse of discretion. State v. Akau, 118 Hawaiʻi 44, 51, 185 P.3d 229, 236 (2008) (citations omitted). A trial court abuses its discretion when it "clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." State v. Wong, 97 Hawaiʻi 512, 517, 40 P.3d 914, 919 (2002).

### Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." State v. Castillon, 144 Hawaiʻi 406, 411, 443 P.3d 98, 103 (2019) (quoting Panado v. Bd. of Trs., Emps.' Ret. Sys., 134 Hawaiʻi 1, 10, 332 P.3d 144, 153 (2014)).

## III. DISCUSSION

HRS § 701-109(2), the "compulsory joinder" statute, prohibits the State from subjecting a defendant to separate trials for offenses arising from the "same conduct" or "same episode," if the offenses are known to the prosecutor at the commencement of the first trial and are within the jurisdiction of a single court. This statute provides:

> [A] defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

HRS § 701-109(2)(2014).  Under HRS § 701-111(1)(b)(2014),[9] the prosecution is prohibited from prosecuting a defendant for an offense which should have been joined in a prior trial under HRS § 701-109(2).

In this case, the parties do not dispute that both the Driving Charge and the Assault Against LEO charge were known to the prosecution when the earlier Driving Charge was filed.  There is no dispute that both criminal offenses were within the jurisdiction of the circuit court.  See HRS § 603-21.5 (2016) ("The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute, of . . . criminal offenses cognizable under the laws of the State, committed within their respective circuits[.]").  The only disputed issue is whether the offenses were part of the "same episode" under HRS § 701-109(2).

In State v. Carroll, 63 Haw. 345, 351, 627 P.2d 776, 780 (1981), the Hawaiʻi Supreme Court addressed the "same episode" language in HRS § 701-109(2) and adopted the following test:

---

[9]     HRS § 701-111(1)(b) provides:

Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:

(1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701-110(3) and the subsequent prosecution is for:

....

(b) Any offense for which the defendant should have been tried on the first prosecution under section 701-109 unless the court ordered a separate trial of the offense[.]

> In view of the dual considerations of fairness to the defendant and society's interest in efficient law enforcement, we hold that the test for determining the singleness of a criminal episode should be based on <u>whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge</u>.

(Emphasis added).  This test was adopted from the Oregon Supreme Court case of <u>State v. Boyd</u>, 533 P.2d 795, 798 (Or. 1975), which held that multiple charges arise from the same episode "'if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.'"  <u>Carroll</u>, 63 Haw. at 349, 627 P.2d at 779.  The Hawaiʻi Supreme Court explained the "single episode" rationale and policy considerations as follows:

> <u>Where the offenses occur at the same time and place and under the same circumstances, it is likely that the facts and issues involved in the charges will be similar.  The witnesses to be used and the evidence to be offered will probably overlap to the extent that joinder of the charges would be justified</u>.  Compulsory joinder of offenses which share a proximity in time, place and circumstances would not only protect the defendant from successive prosecutions based on the same conduct or episode, but it would also save the defendant and the State time and money required in the presentation of repetitive evidence.

<u>Id.</u> at 351, 627 P.2d at 780 (emphasis added).

In <u>Carroll</u>, after the defendant was arrested for starting a fire, during a routine search, a police officer failed to recognize a canister of Mace discovered in the defendant's possession. 63 Haw. at 346, 627 P.2d at 777.  Forty minutes later, during a custodial search at the police station, a second officer identified the Mace, and the defendant was charged for possession of an obnoxious substance, a misdemeanor.  <u>Id.</u> at 346-47, 627 P.2d at 777-78.  The defendant was first tried and acquitted of the misdemeanor possession offense for the Mace, and subsequently indicted for felony attempted criminal property damage.  <u>Id.</u> at 347, 627 P.2d at 778.  The circuit court granted the defense motion to dismiss the felony indictment for attempted criminal property damage, on grounds that the two offenses were

part of a single episode subject to compulsory joinder under HRS § 701-109(2).  The Hawai'i Supreme Court reversed the dismissal applying the new single episode test, holding that the subsequent attempted criminal property damage prosecution was not barred by the prior misdemeanor possession prosecution because the "offenses occurred at different times and places and under different circumstances[,]" and "they were discovered under different circumstances which resulted in arrests by different police officers."  Id. at 352, 627 P.2d at 781.

Since Carroll, the Hawai'i Supreme Court has applied this single episode test in State v. Servantes, 72 Haw. 35, 804 P.2d 1347 (1991) (holding that prosecution of felony drug charges was barred by earlier prosecution of defendant for misdemeanor marijuana possession charge which arose from the same episode; the misdemeanor marijuana charge was based on police observation of marijuana next to defendant's foot as he sat in a vehicle, which established probable cause for a search warrant to search the vehicle for additional drugs whereupon cocaine and paraphernalia were seized, leading to defendant being charged with the felony drug charges in the current prosecution); State v. Keliiheleua, 105 Hawai'i 174, 95 P.3d 605 (2004)(holding that prosecution of defendant for negligent injury was not barred by earlier prosecution of defendant for insurance fraud which did not arise from the same episode, where defendant, who was uninsured at time of car accident where negligent injury first degree offense occurred, obtained insurance coverage later that same day and made fraudulent insurance claim); and State v. Akau, 118 Hawai'i 44, 185 P.3d 229 (2008)(holding that prosecution of defendant for three counts of second degree promotion of dangerous drugs for three undercover drug buys, was barred by earlier prosecution of defendant for felony drug and paraphernalia possession; the three drug buys at issue in the current prosecution provided probable cause for search warrant of defendant leading to the discovery of methamphetamine and

paraphernalia, which were the basis of the felony drug charges in the prior prosecution).

> **A.    The Driving Charge and the Assault Against LEO charge were not closely related in time, place and circumstances for compulsory joinder under the single episode test.**

The circuit court's analysis and ruling turned on its conclusion that because the Assault Against LEO charge was prosecuted second, after the Driving Charge, a complete account of the Assault Against LEO charge could not be presented without referring to the details of the Driving Charge.[12]  The circuit

---

[12]    The circuit court ruled as follows:

> [THE COURT:]  And despite what the State sets forth in its memorandum in opposition, I think it's really as basic as this, and essentially I agree with what [defense counsel] has just set forward.  You've always got two crimes at issue.  That's axiomatic.  You got two crimes.  And one was committed before the other one, allegedly.  Again, that's axiomatic.  Or we wouldn't be here.

> And I think it just so happened that so far in the cases what's been at issue has been the first case.  That was the case in Carroll.  You had CPD, for the guy allegedly setting fire at an elementary school.  And then the subsequent, the second crime, is a simple possession of Mace . . . .

> And he was convicted first of the second one.  And then he was going to go to trial on the first one.  And there was a motion to dismiss.  And it was denied.  But it was denied, because, in my view – although this wasn't really part of the analysis explicitly - it's because it was the first one.

> And because it was the first one, it could in fact -- there could be in fact a complete account given of that charge without referring to the details of the second charge; because quite frankly, fundamentally, there was nothing of relevance to the first charge in the second charge.  And, in fact, it would be the defense in that case who would want to keep it out.  That by the way, you know, he also had this illegal substance in his pocket when he allegedly set the fire.

> So, again, I think it was implicit, though it was not made explicit in the analysis, because it kind of didn't have to be.  It was so implicit.  That it's because it was the first crime that was at issue.

> And as [defense counsel] has pointed out, it's the same thing in Keliiheleua.  What's at issue in Keliiheleua
> (continued...)

10

court concluded that the single episode test applied because a complete account of one charge could not be related without referring to details of the other. Respectfully, this was not a proper application of the Carroll single episode test. This application of the single episode test erroneously focused on the language, "referring to details of the other charge," without properly considering the full test, i.e., whether the alleged conduct in both offenses, was "so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." Carroll, 63 Haw. at 351, 627 P.2d at 780 (emphasis added). If the record does not establish that the "alleged conduct" of both charges "was so closely related in time, place and circumstances[,]" it does not matter whether references to the details of the other charge occur, because the "closely related" criteria of the single episode test would not have been met. A single criminal episode refers to conduct that is "so closely related in time, place, and circumstances that a complete account of one charge cannot be related without referring to details of the other charge," id. (emphasis added), not because a complete account of one charge cannot be related without reference to the details of the other.

---

[12](...continued)
is the first crime that's set to go to trial. The second crime, the fraud crime, was already taken care of.

And just as Justice Acoba says, you know, the negligent injury charge can be tried without mention of the fraud case. Because again, the details of the fraud case are completely irrelevant to the negligent-injury charge. Although, as [defense counsel] persuasively argues, it's not the same way when it's flipped. Again, it wasn't explicitly part of the Keliiheleua analysis. But that's because it didn't have to be, because of the factual circumstances of that case. But this case is completely different, in the sense that what's at issue is the second charge.

And the long and short of it is I'm completely persuaded by the defense argument in this case. I think it's correct. I don't see how a complete account of the assault-against-police-officer charge could be given without referring to the details of the earlier accident.

Assuming <u>arguendo</u> it is necessary to admit details of the Driving Charge at a hearing or trial for the Assault Against LEO charge, this does not mean that the offenses must be joined. <u>See</u> <u>State v. Stolz</u>, 806 P.2d 715, 717 (Or. App. 1991) (applying <u>Boyd</u>, 533 P.2d 795, and holding that where defendant was arrested for restraining order violation and subsequently incurred a resisting arrest charge during the same incident, "[e]ven if some details of defendant's violation of the restraining order are *admissible* at trial on the resisting arrest charge, that does not mean that the charges must be joined.") (italics in original)(citation omitted); <u>State v. Crumal</u>, 659 P.2d 977, 980 (Or. App. 1983) (holding that where defendant was in custody for burglary and assault charges, taken to a hospital by the police for treatment of his injuries, and subsequently incurred a disorderly conduct charge for disruptive behavior at the hospital, "[t]he fact that certain details of the events" from the home where the burglary and assault charges occurred "were *admissible* at trial on the disorderly conduct charges does not mean that joinder is required.") (italics in original) (citing <u>Boyd</u>, 533 P.2d 795. The application of the <u>Carroll</u> single episode test is not dependent on whether the "other charge" may be mentioned during the course of a trial or hearing, but is contingent upon whether the conduct in both charges is "so closely related" in time, place, and circumstances, that a "complete account of one charge cannot be related without referring to details of the other charge." <u>Carroll</u>, 63 Haw. at 351, 627 P.2d at 780.

In <u>Keliiheleua</u>, the Supreme Court applied the <u>Carroll</u> single episode test and found no compulsory joinder because the criminal charges in question were not closely related in time, place and circumstances. 105 Hawaiʻi at 181, 95 P.3d at 612. Regarding the "time" and "place" factors, the <u>Keliiheleua</u> Court reasoned that although the accident and the fraudulent insurance claim occurred on the same day, they did not occur at the same time, and that the places where the defendant committed the

offenses were different.  Id. at 181-82, 95 P.3d at 612-13.
Regarding the "circumstances" factor, the Court concluded as
follows:

> Third, the circumstances of the cases were not
> similar.  "Where the offenses occur at the same time and
> place and under the same circumstances, it is likely that
> the facts and issues involved in the charges will be
> similar."  Carroll, 63 Haw. at 350, 627 P.2d at 780.
> However, in this case, the facts and issues involved in the
> charges(namely, the statutory requirements of the alleged
> offenses) are dissimilar.

Id. at 182, 95 P.3d at 613 (emphases added) (footnote omitted).
In a footnote to this passage, the Keliiheleua Court also
explained, "[e]xamples of crimes arising from the same criminal
episode include the simultaneous robbery of seven individuals,
the killing of several people with successive shots from a gun,
the successive burning of three pieces of property, or such
contemporaneous and related crimes as burglary and larceny, or
kidnaping and robbery."  Id. at 182 n.9, 95 P.3d at 613 n. 9
(internal citation and quotation marks omitted).  In contrast,
this case does not involve simultaneous or successive identical
offenses.  The Driving Charge and the Assault Against LEO charge
are also not "contemporaneous and related" like the burglary-
larceny, or kidnapping-robbery examples cited by the Keliiheleua
Court.  Id.

Based on the record in this case, we cannot conclude
that the alleged offenses occurred at the same time or place, or
that the alleged conduct was closely related in time and place.
The record does not provide any facts, issues or circumstances
related to the Driving Charge, other than the time and location
of the accident, and the license plate of the suspect vehicle
involved.  The offenses occurred about an hour apart, with a 2.1
mile distance between the two locations.  On this record, we also
cannot conclude that the conduct underlying the charges occurred
under the same or similar circumstances, or that there was a
close relationship between the circumstances of both offenses.
The officers first came into contact with Sardinha while

13

responding to an argument call at Nancy's Kitchen, not because the vehicle in the fled scene case was there. There is nothing in the record to indicate that the charges both entailed the same witnesses, or that any overlap in the evidence would occur, militating in favor of joinder. Thus, on this record, the alleged offenses did not occur "under the same circumstances," such that "the facts and issues involved in the charges will be similar[,]" necessitating joinder. Id. at 182, 95 P.3d at 613 (quoting Carroll, 63 Haw. at 350, 627 P.2d at 780).

In concluding that the offenses therein did not share similar circumstances, the Keliiheleua Court also pointed to the dissimilarity of "the statutory requirements of the alleged offenses[.]" Id. Here, the statutory requirements of the Inattention to Driving charge,[13] and the Assault Against LEO charge,[14] are dissimilar. There is no overlap in the elements that the State must prove for the Driving Charge (i.e. that Sardinha operated a vehicle without due care or in a manner causing a collision) or the Assault Against LEO charge (i.e. that Sardinha intentionally or knowingly caused bodily injury to Officer Sesoko while the officer was engaged in the performance of duty). Thus, the circumstances of the alleged offenses are not so closely related, such that joinder would be required.

Finally, the Carroll Court explained that requiring "[c]ompulsory joinder of offenses which share a proximity in time, place and circumstances" satisfies the dual policy considerations of "protect[ing] the defendant from successive prosecutions based on the same conduct or episode," and also "sav[ing] the defendant and the State time and money required in the presentation of repetitive evidence." Carroll, 63 Haw. at 351, 627 P.2d at 780. Joinder of the Driving Charge and Assault Against LEO charge here would not save Sardinha and the State time and money "in the presentation of repetitive evidence,"

---

[13] See HRS § 291-12 supra note 5.

[14] See HRS § 707-712.5 supra note 7.

because the record does not indicate that any evidence would be "repetitive" in the context of both cases. Id.

For these reasons, the Driving Charge and the Assault Against LEO charge were not so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to the details of the other charge. Under the single episode test, joinder was not required.

> **B.   Under the Akau probable cause analysis, the Driving Charge and the Assault Against LEO charge were not closely related in circumstances.**

In Akau, the most recent single episode case, the Hawaiʻi Supreme Court adopted a probable cause analysis for examining the "circumstances" factor of the same episode test, as follows:

> we believe that the relevant case law in this jurisdiction establishes that, when examining the "circumstances" of offenses alleged to be part of the "same episode," this court has focused primarily on whether the facts and circumstances of the first discovered offense provided sufficient probable cause to suspect that the defendant had committed or would commit the second discovered criminal offense.

Akau, 118 Hawaiʻi at 57, 185 P.3d at 242.

In this case, both sides dispute which charge was the first discovered offense. The State contends that the Driving Charge was the first discovered offense, and Sardinha counters that the Assault Against LEO charge was the first discovered offense because Sardinha "was not identified as the driver in the 'Fled Scene' case until after he was arrested in the assault case[.]" Applying the probable cause analysis, we conclude that the alleged offenses are not closely related in circumstances, regardless of which was discovered first.

"[A] police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is

15

being committed." HRS § 803-5(b) (2014). "Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonable trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty." State v. Maganis, 109 Hawai'i 84, 86, 123 P.3d 679, 681 (2005) (citation, italics, and quotation marks omitted).

In this case, the Driving Charge had occurred an hour prior to the argument call at Nancy's Kitchen. Because the driver had fled the scene of the accident, the identity of the driver was unknown, and the location of the vehicle was also outstanding. The police had information regarding only the date, time, and location of the accident, and the vehicle's license plate number. Based on this record, the facts and circumstances of the Driving Charge did not provide sufficient probable cause to suspect that Sardinha would subsequently head-butt Officer Sesoko, leading to the Assault Against LEO charge.

Even if we were to accept Sardinha's argument on appeal that the first discovered offense was the Assault Against LEO charge, the police still did not have probable cause on this record, to suspect that Sardinha had committed the Driving Charge. In particular, the record does not reflect how or when Sardinha was identified as the driver in the Driving Charge.

The point in time at which Sardinha was identified as the suspect driver in the Driving Charge is important, because prior to that identification, the facts and circumstances within the knowledge of the arresting officers for the Assault Against LEO charge, did not establish probable cause to believe that an offense other than Assault Against LEO had been committed. See Carroll, 63 Haw. at 352, 627 P.2d at 781 ("The point in time at which the Mace was identified is important because prior to the identification, the facts and circumstances within the first arresting officer's knowledge did not afford probable cause to believe that an offense other than Attempted

Criminal Property Damages in the Second Degree had been committed."). The mere fact that Sardinha was in possession of the suspect vehicle did not establish probable cause that Sardinha had committed the Driving Charge, where Sardinha could have been a passenger rather than the driver, or Sardinha may not have been present at the time of the accident. There is no evidence in the record establishing how or when Sardinha was identified as the driver in the Driving Charge, and thus, on this record, the police did not have probable cause to suspect that Sardinha had committed the Driving Charge, at the point of arrest for the Assault Against LEO charge.

For these reasons, applying the probable cause analysis in Akau, the circumstances of the Assault Against LEO charge and the Driving Charge, were not so closely related under the single episode test, that joinder was required.

### IV. CONCLUSION

Based on the foregoing, the circuit court erred in granting the Motion to Dismiss because compulsory joinder under HRS § 701-109(2) did not apply. The circuit court's October 14, 2016 Order Granting Sardinha's Motion to Dismiss with Prejudice Pursuant to HRS §§ 701-111 and 701-109 is vacated, and we remand for further proceedings.

DATED: Honolulu, Hawaiʻi, January 15, 2021.

On the briefs:

Brandon H. Ito,
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellant

Thomas M. Otake,
for Defendant-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge